IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| DAINA MUEHLING, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:12-CV-013 |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION TO REVERSE DECISION
OF THE COMMISSIONER AND TO REMAND THE CASE**

Plaintiff DAINA MUEHLING brings this cause of action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration (Commissioner), denying plaintiff's application for supplemental security income benefits. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case be REMANDED for action consistent with this Report and Recommendation.

I.
BACKGROUND

Plaintiff applied for disability insurance benefits on May 5, 2009. (Transcript [hereinafter Tr.] 154). In her application, plaintiff alleged she had been unable to work since February 2, 2009, due to a plethora of musculoskeletal problems involving her back, hips, shoulders, and knees, along with fibromyalgia, carpal tunnel syndrome, high blood pressure,

stomach problems, memory and concentration problems, panic anxiety disorder, and depression. (*Id.* 154, 180). The Social Security Administration, finding plaintiff suffers from the primary problem of "Disorders of Back (discogenic and degenerative)," "Essential hypertension," and "Affective/Mood disorders," denied benefits initially and upon reconsideration. (*Id.* 106, 107).

Upon plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on November 8, 2010. (*Id.* 65). At step one of his determination, the ALJ held plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.* 38). At step two, the ALJ found plaintiff suffered from the severe impairments of degenerative disc disease of the lumber spine, degenerative changes to the cervical spine, degenerative joint disease of the left knee, mood disorder secondary to chronic back pain, hypertension, obesity, and a history of abdominal pain. (*Id.*). At step three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found plaintiff had the residual functional capacity (RFC) to

> perform light work as defined in 20 C.F.R. 404.1567(b) except she requires a sit/stand option. She can occasionally kneel, crouch, crawl, stoop and perform overhead reaching. She cannot climb ladders, ropes, or scaffolds. She cannot work around hazards, such as unprotected heights. She is capable of performing detailed, but not complex, job tasks.

(*Id.* 39). This RFC determination precluded plaintiff from returning to her past relevant work. Consequently, at step five of his analysis, the ALJ concluded, "the claimant has acquired [customer service] skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (*Id.* 48). The ALJ's determination was upheld on appeal. (*Id.* 1). The instant federal claim, based on 42 U.S.C. §

405(g), followed.

## II.
## ISSUES PRESENTED

Plaintiff contends reversal of the Commissioner's determination is warranted based upon two errors of law committed by the ALJ:

1. The ALJ erred in determining "customer service skills" are transferrable skills within the meaning of the Social Security Code.

2. The ALJ erred in his application of a sit/stand option in that an individual requiring such an option is not capable of performing either the full range of light or sedentary work, as defined in the Social Security Code.

## III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). This case is atypical in that plaintiff does not challenge the existence of substantial evidence in the record supporting the determination but rather contends the ALJ committed two errors of law.

"Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Where the resulting disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected. *See id.* "The procedural improprieties alleged by [a plaintiff] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d

333, 335 (5th Cir.1988).

## IV.
## MERITS

Plaintiff contends the ALJ erred in determining "customer service skills" are transferrable skills within the meaning of the Social Security Code. Plaintiff avers the phrase "customer service skill" is too vague and/or broad to be considered a "skill" as that word is defined in the regulations. The Commissioner has responded that the vocational expert was the one who identified "customer service skills" as transferrable to the jobs of hotel clerk, automobile self-service attendant, and cashier/checker, and the ALJ did not err by his reliance on such testimony. (*See* tr. 99).

At the ALJ hearing, a vocational expert (VE) testified plaintiff's past relevant work was as a bank teller, barista or coffee maker, customer service representative, music teacher, and music minister, all of which carry a specific vocational preparation level of 3 or more. (*Id.* 98). The ALJ questioned whether a person of the same age, education, and work history as plaintiff, with an RFC for light work with some postural limitations and who could perform detailed but not complex job tasks, could return to any of plaintiff's prior professions. (*Id.*). The VE indicated such a person could not return to any of plaintiff's prior professions. (*Id.* 99). The ALJ then proceeded:

> Q. Okay, are there any transferrable skills to jobs that such a person could still perform?
>
> A. [INAUDIBLE] would be customer service skills from past work that would transfer to -- . . . a hotel clerk, hotel/motel . . . An auto self service attendant . . . Also a cashier/checker . . .

(*Id.*). These are the same three jobs which the ALJ identified in concluding plaintiff is capable

of working. (*Id.* 48-49).

### A. What is a "Skill"

The regulations treat a "skill" as a specific and articulable learned ability. *See* 20 C.F.R. § 404.1565(a) (describing a skill as something a person "acquires"); *Ellington v. Sec'y of Health & Human Servs.*, 738 F.2d 159, 160 (6th Cir. 1984). Specifically, the regulations establish, "[w]e consider you to have skills that can be used in other jobs when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d). Beyond the regulations, the Social Security Administration has issued a ruling offering further insight as to what a "skill" is:

> [a] skill is *knowledge* of a work activity which requires the exercise of *significant judgment* that goes *beyond the carrying out of simple job duties* and is acquired through performance of an occupation which is above the unskilled level (*requires more than 30 days to learn*). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner . . . A skill gives a person a *special advantage* over unskilled workers in the labor market.

Social Sec. Ruling 82-41, 1975-1982 Soc. Sec. Rep. Serv. 847, 848-49 (1982) (emphasis added). In his or her finding that a claimant has transferable skills, the ALJ must specifically identify the acquired work skills and the occupations to which those skills will transfer. *Id.*

There is little caselaw from the Fifth Circuit on the topic of what constitutes a skill and when it is properly considered transferable. Caselaw from other circuits, however, provides guidance. For example, in *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 311 (6th Cir. 1983), the Sixth Circuit extensively discussed what qualifies as a skill. In that case, the court drew a distinction between an aptitude and a skill: "An 'aptitude' is an 'inclination, a

natural ability, talent, or capacity for learning.' A 'skill' is a 'learned power for doing something competently.' In short, an aptitude is an innate ability while a skill is a learned ability." *Id.* at 311-12 (internal citations omitted). Thus, examples of skills are "activities like making precise measurements, reading blueprints, and setting up and operating complex machinery." Social Sec. Ruling 82-41, 1975-1982 Soc. Sec. Rep. Serv. 847, 849. Taking and recording a person's temperature, pulse and respiration, and the ability to type, file, tabulate, and post data in record books are also considered skills that may be transferable. *Id.* at 850-51. On the other hand, physical abilities to do certain things, manual dexterity, alertness, coordination, the ability to pay attention or concentrate, perceive details, and do a number of things at one time are not considered skills but are rather classified as aptitudes. *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 773 (6th Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 220 (3d Cir. 1984); *Wallace v. Sec'y of Health & Human Servs.*, 586 F.Supp. 395, 398 (D.N.J 1984). Courts have likewise found "independence of judgment" and "responsibility for work product" too vague to constitute a "skill" for purposes of a transferability analysis and have instead classified them as an aptitude. *See Cole*, 820 F.2d at 773; *Elligton v. Sec'y of Health & Human Servs.*, 738 F.2d 159, 161 (6th Cir. 1984). In cases where transferability of skills was discussed, the VE went into a great deal of detail regarding exactly what skills the claimant possessed and how or why those skills transferred to the jobs proposed by the VE. *See Perez v. Heckler*, 298 F.2d 298, 303 (5th Cir. 1985) (referencing the VE's testimony discussing the claimant's training as a truck driver); *Surkand v. Barnhart*, 2001 WL 1518292, at *4 (E.D. La. 2001) (setting forth testimony both from the claimant and the VE regarding claimant's training with phone systems and ability to interact with others, specifically how to receive callers, expeditiously determine the nature of

their business, direct them to the appropriate destination, and communicate effectively with the person called upon).

### B. Does Plaintiff Possess any "Skills"?

In this case, the only evidence in the record regarding any potentially transferable skills plaintiff may possess is found in the VE's simple, unexplained statement that plaintiff possesses "customer service skills." (Tr. 99). It is unclear from the record exactly what entails a customer service skill or, more importantly, what there is about a "customer service skill" that requires more than thirty days to learn and gives plaintiff a special advantage over other job applicants. It could be that customer service skills merely involve something as simple as listening to a customer, replying with an answer, and other activities that are part of day-to-day, basic human interaction. On the other hand, it may involve something additional like the ability to empathize with a person, anticipate his or her needs, and continually be able to maintain a certain degree of professionalism while engaging in problem solving. Left unexplained, the phrase "customer service skills" could describe something very basic that would not technically qualify as a "skill" under the regulations or something more advanced that possibly could qualify as a "skill." Left to the imagination, anyone from a janitor to a CEO or anyone in between who is a part of the large number of customer-driven enterprises in the nation's economy could potentially possess "customer service skills." This issue is even more uncertain because it is unclear what comments might have preceded the VE's statement regarding customer service skills since the initial response by the VE to the ALJ's question was "inaudible." (*Id.*). The VE's sparse recorded testimony on the subject leaves the Court, as it should have left the ALJ, questioning exactly what skills, i.e. what learned "knowledge" requiring the exercise of "significant

judgment" and going beyond "the carrying out of simple job duties," plaintiff possesses. *See* Social Sec. Ruling 82-41, 1975-1982 Soc. Sec. Rep. Serv. at 848-49.

The transferability of skills is a determination entrusted to the ALJ, not the VE. *See id.* (detailing instances when an ALJ may make a transferability determination without testimony of a VE and instances when the testimony of a VE is required to give an ALJ all the information he or she needs to make the transferability determination). Consequently, the VE's testimony must be specific enough to provide the ALJ sufficient information to render an informed ruling. As detailed above, the testimony of the VE in this case was insufficient. The VE's testimony gives no basis for the determination plaintiff has a knowledge that took her more than thirty days to learn and which will give her a "special advantage" over other job candidates applying for a position as a hotel clerk, automobile self-service attendant, or cashier/checker. Even though the VE in this case may have thought plaintiff possessed transferable skills as defined in the regulations, the ALJ could not have independently made that determination without additional development of the VE's definition of a "customer service skill" and how such a skill would transfer to the jobs listed by the VE.[1] Likewise, even though plaintiff asks the Court to render a determination of disabled based on the conclusion plaintiff did not possess any transferable skills, the Court is unable to make such a finding based on the limited, undeveloped administrative record on that issue.

---

[1] It could be that the VE offered additional development of his conclusion because, as noted above, there is a portion of the record immediately before the VE's statement that is inaudible. (Tr. 99). If there was additional testimony going into the specifics of the VE's conclusion that plaintiff possesses transferable "customer service skills," it is unfortunately not included either in the hearing transcript, the VE's or plaintiff's testimony, or the ALJ's written determination. The Court has before it only the cold record of the case, which is lacking in development on the key issues of exactly what skills plaintiff possess and how they are transferable. *See* 20 C.F.R. § 404.1568(d).

### C. *Plaintiff's Substantial Rights*

Having determined the ALJ erred in relying on the VE's undeveloped testimony in concluding plaintiff has transferable "skills," the Court must now determine whether the ALJ's error affected the plaintiff's substantial rights. *Mays*, 837 F.2d at 1364.

When a person is unable to perform his or her past relevant work, the Commissioner utilizes the grids to determine whether that person is disabled. Whether application of the grid for light work will result in a determination of not disabled is a function of the person's age, education, and "transferable skills." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2. The determination of whether a claimant, like plaintiff, who is over fifty-five years old with the education of a high school graduate or more, is disabled *turns on* whether such a person has transferable skills. *Id.* If such a person has transferable skills, she is not disabled; if she does not have transferable skills, she is disabled. *See id.*

The ALJ in this case utilized the grids as a "framework" for his decision. (Tr. 49). Under the grids, whether plaintiff possesses transferable skills is *the determining factor* in whether plaintiff qualifies for disability. The determination of not disabled may be changed by a more thorough analysis of plaintiff's "skills." Consequently, the procedural error alleged by plaintiff constitutes a basis for remand. *See Morris*, 864 F.2d at 335; *Mays*, 837 F.2d at 1364. Because the Court concludes plaintiff's first point is meritorious and requires reversal and remand of the case, it does not reach the merits of plaintiff's second point.

### V.
### RECOMMENDATION

For all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding

plaintiff DAINA MUEHLING not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for administrative action consistent with this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 6th day of March, 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).